Thank you. The second case of the day, A&C Construction v. Zurich American, Mr. Moore. Thank you, Your Honor. May it please the court, my name is Abram Moore. I'm counsel for the plaintiff A&C Construction. This is a dispute over payment for construction work performed by A&C building troop housing for the United States Army on an airbase in Qatar. A&C was hired by Black Cat Engineering, a subcontractor on that project, to perform fire suppression and mechanical, electrical, and plumbing work, MEP work on that project. A&C hasn't been paid for its work, so it has sued the sureties for the prime contractor on a Miller Act. This case is before the court because the district court granted summary judgment on behalf of the sureties, finding that A&C didn't meet the timing requirements in the Miller Act, and the Miller Act requires a second-tier subcontractor like A&C to meet two timing requirements. First, it's required to provide notice to the prime contractor within 90 days from the last day of the work claimed in the notice, and second, it's required to file its complaint within one year of the claimed work. Because there are genuine issues of material fact regarding when A&C last furnished equipment and labor to the project, A&C asked this court to reverse the district court's judgment to remand for further proceedings. The district court's judgment was based on its finding that A&C's last day of claimable work was in May of 2016 rather than in February of 2017, and there are two independent reasons why the court should find there's at least an issue of fact regarding when A&C's last day of work was. First, A&C continued furnishing its own equipment at an agreed monthly rate, which Black Cat continued to use on the project through February of 2017, and second, A&C continued to furnish labor through its ducting subcontractor, RNC, through February of 2017. With respect to the first reason, A&C's equipment, the law is fairly uniform. It doesn't appear that the parties really dispute what the law is here, and the courts unanimously find that a lessor of equipment to be used on a federal project is entitled to recover unpaid lease payments under the Miller Act for the entire period when its equipment is on-site and available for use. So the sureties argue that there was no agreement between A&C and Black Cat to lease equipment, at least that's what they appear to argue, but the evidence here is to the contrary, and the first place to look here is at the subcontract alliance agreement itself between A&C and Black Cat. It's attached to the amended complaint at docket number 14-3, and at page 17 out of 153 A&C has responsibility as a subcontractor to provide the plant and the equipment, and the same subcontract on page 14 says that if the plant and equipment is required, then A&C was to propose rates for the plant and equipment for acceptance. The testimony from A&C's president is A&C did propose rates for the use of its equipment, and Black Cat did agree to those rates. The record also shows... Where is there evidence that they were actually leasing this equipment as part of your agreement? I certainly don't see it in the MEP agreement or the fire suppression agreement. Judge Saini, even if in the MEP agreement itself it says that A&C shall is obligated to provide the plant and equipment at agreed rates, so that suggests that there was to be a monthly rate, and then we have the testimony from A&C's president that the equipment was provided as per the agreed rental rate agreed with Black Cat since the beginning of the project. We also have the monthly invoices, and we have the testimony from Mr. Kardahi of A&C that those invoices were sent monthly, and the cost has been approved since the beginning of the project. Are the monthly invoices you're referring to the your proposed additional facts that look like invoices? I mean that look like spreadsheets? The invoices start at the appendix A139, and the first page of the invoice is A&C's record of the invoice, and then yes, the remainder of each invoice is the itemized list of the equipment that belongs to A&C that and at the bottom the monthly price for the for all of the equipment together which was roughly $20,000 per month. Is there any evidence though that you were actually billing Black Cat for this leased agreement? Well the evidence is from the testimony of Mr. Kardahi that these invoices were sent to Black Cat and that they were approved since the beginning of the project, and then we have the actual invoices themselves. We also have testimony from Black Cat's own project representative who said that A&C's plant and equipment remained on site till the end of the project, and therefore A&C had skin in the game, meaning that A&C was continuing to provide that equipment at the monthly rate. Because Black Cat's use of A&C's equipment through February of 2017 because Black Cat did use the equipment, it means that A&C was providing claimable equipment at the time of its August 2016 notice, and therefore the notice was timely with respect to all of the work that was set forth in the notice itself, all the pre-notice work. That's your pre-notice argument. First of all, I think you would agree that the August 26 notice is not within 90 days of the We're not disputing that. So you're arguing that the August 16th notice put them on notice and triggered payment with respect to all work done up until that point, correct? That's correct. But you did not make that argument at the summary judgment stage before the district court. You didn't raise it until your motion for reconsideration. Why haven't you waived that? Well, Your Honor, before the district court, we argued that this August 2016 notice was sufficient for all of the work that A&C had performed on the project. But you argued that in response to the summary judgment, or at the summary judgment stage, not the motion to reconsider, you argued that you should be paid through February of 2017, not that the notice put them on notice up through that point. So your dates have shifted, which is significant for the Miller Act. Well, Your Honor, we claim that we haven't changed the date that we're arguing for the last day of work. We continue to say that A&C worked through February of 2017. So that hasn't changed. But you've shifted your date as to what the notice held them responsible to for the work period it held them responsible for. Well, it's correct that in the district court we argued that the August 2016 notice was sufficient for work claimed on the notice, plus the additional post notice work that is included in the complaint. That's true. And on appeal, we're arguing only that the notice was sufficient for the work claimed on the notice. So we've narrowed the claim, but there's nothing that we're arguing here. We're not Mr. Moore, it's Judge Scudder. Let me ask you a question. I think I understand your argument just fine, but I wonder if there's any if there's any outer limit to the legal point that underlies your argument. And the question, so the question therefore is, in your view, is there any limit on a subcontractor's of, you know, what you might call pre-completion notice under this 3133 B2 of the Miller Act? Judge Scudder, the limit on the notice is that the work that can be claimed in the notice has to be pre-notice work, and I think it's I don't know, I understand that, but what about, so let me give you a very simple hypothetical. Suppose a subcontractor is working on a 10-year project to and they don't get paid after month one, and they're worried about that. It's a 10-year project. They're not getting paid after month one. They're worried this isn't going to go well, and so they provide notice, and they say we definitely want paid for the first month's worth of work, but we also want to get paid prospectively for all the work that we intend to do for the next 119 months. Does that work under the statute? It does work under the statute, Your Honor, but the notice would be effective only for the work that was performed within the first month, and I think it's useful to look at the purpose of the 90-day notice. It was set forth accurately in the sureties briefing. Okay, now that differs from your notice, right? Because your notice here was not saying, hey, look, we'd actually like to get paid for all of the work out to February 28th, 2017, but let's be clear. At a minimum, we want paid for work on or before this notice date of August 16th, 2016. That's not what your notice said, is it? No, it isn't. What the notice said was that the balance unpaid as of the date of the notice was $8.4 million. What the complaint says is that we're entitled to that, plus the work that was performed after the notice was another $188,000 worth of notice. Oh, I'm sorry, of work. So the notice was very specific about the work that it was claiming, so the amount claimed, and that was the amount that was performed up through the date of the notice. So what we're arguing on appeal is that that notice was was sent contemporaneously with the notice, and it does say that certain A&C equipment remains on site, but it's not projecting forward. The notice doesn't say we also want to later be able to recover for that work. Now, the second reason why the court should find that A&C was continuing to perform work through February 2017 is because A&C had a subcontractor on site through the end of the project in form of RNC, and the RNC continued providing labor through February of 2017, but the sureties argue that A&C can't claim for the work of RNC because it's a third-tier subcontractor outside the scope of the Miller Act's protection. But the sureties base this argument on a misapplication of the Supreme Court's decision in J.W. Bateson. The claimants in Bateson were not third-tier subcontractors, as the sureties claim. They were the employees of the second-tier subcontractor, and the those employees couldn't bring a claim because they didn't have a contract with the first-tier subcontractor, which is required to have standing under the Miller Act. But the second-tier contractor in that case obviously could have brought a claim for the work of its own employees, even if those employees couldn't bring a claim themselves. So at bottom, the court held that the Miller Act only protects against defaults two steps down the contractual chain, but it should be able to recover for the work that they furnish through their employees, as was the case in Bateson, or through their subcontractors. And we think that the District of Delaware got this right in the Sweeney and Richardson decisions when it held that both first- and second-tier subcontractors should be able to recover for the work performed by their subcontractors under the Miller Act. Mr. Moore, I just want to tell you, you have a little over two minutes left on your rebuttal. If you want to save some time. I'll reserve the remaining time for rebuttal. Thank you, Your Honor. All right. Thank you, Mr. Moore. Mr. Owen? Good morning, and may it please the Court. My name is Brent Owen. Can you hear me? Yes. Great. And I represent the sureties in this Miller Act case. The Miller Act has two timing requirements. According to settled Seventh Circuit precedent, both requirements are strict conditions to suit. Here is how A&C describes those timing requirements in its response to summary judgment at page 859 of the appendix, which is page 5 of its response. Quote, the Miller Act imposes two timing requirements upon subcontractors like A&C who bring suit on a payment bond. First, it requires written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. Second, it requires that suit be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action. Both timing requirements run from the last date upon which labor was performed or material was supplied. A&C's summary of the Miller Act is correct in its response brief to summary judgment. That is exactly how this Court has on multiple occasions described the timing requirements, and the District Court applied the law precisely and correctly. The Miller Act's liberal interpretation does not apply to the strict condition precedent, which A&C undisputedly missed. This Court should affirm the District Court's grant of summary judgment. I'll focus my argument here on two points. First, A&C waived the argument it makes now. A&C never argued that it could recover for a portion of its work because it sued within one year of providing its untimely Miller Act notice. A&C expressly argued that the Miller Act's timing requirements run from the last day of work, precisely what the District Court held. A&C first advanced its novel interpretation of the Miller Act in a post-judgment motion. That is too late. Under settled Seventh Circuit precedent, A&C waived the argument it asked this Court to reverse the District Court on. This Court should affirm on that basis. Mr. Owen, this is Judge St. Neve. Are there additional arguments you would have made or additional evidence you would have submitted at summary judgment if that argument had been raised for the first time at the summary judgment briefing? Yes, Your Honor. In particular, the several things come to mind, but first that the subcontract for the fire suppression work was terminated in December of 2015. And so if, for instance, if we had known that the argument was that notice that August 16th was some sort of somehow a relevant date, there may have been additional facts or arguments that we would have presented to establish, perhaps, for instance, that the notice was inaccurate because the $8 million doesn't account, couldn't possibly account for the fire suppression work, which was also untimely. So there's a number of arguments and facts that would have been highly relevant to the District Court to consider, including that A&C had never once advanced that argument in any way, shape, or form. So it would have been changed its last day of work at the District Court. So we were aware that they had, at one point in time, claimed December 2016 and then later claimed February 2017. And in our briefing, we tried to anticipate that. And, of course, we would have attempted to and we would have successfully established that the August 16th date of the cutoff date doesn't work under settled Miller Act precedent. Mr. Owen, it's Judge Scudder. Is there anything that would have prevented A&C from submitting multiple notices as time went on? No, Your Honor. And, in fact, that's, to the extent there's a question, that's exactly what the Miller Act anticipates and requires. And the reason for that is to make sure that the taxpayers don't just face limitless liability from sub subcontractors. Because, ultimately, that's who bears the cost of these claims. The surety insures it, but the taxpayer pays for the price of the contract. And so the statute expressly anticipates that a subcontractor will continue to provide notice within 90 days of the last day for which the work is claimed. And that is to make sure that everyone is on the same page as to what's being prevented A&C from doing so. They simply didn't do that. The second focus of my argument this morning will be that even if some factual dispute exists about A&C's working until February 28th, 2017, and the District Court got that question correct, but even if there is some factual dispute, A&C's claim still fails because A&C did not provide notice within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made, as the Miller Act plainly requires. Before jumping into those arguments, I'd like to make sure make one point about the standard. There's been some mention that the Miller Act is liberally interpreted, and that's correct in certain instances. But for the strict condition precedence to recovery, the Miller Act is not strictly interpreted. It is not liberally interpreted. This court has said so on numerous occasions cited in our brief, and instructed in fact that a court should not use its view of the best ways to achieve the legislative ends to override the legislature's specifications of means, and specifically the notice requirements that we're talking about here. Turning to the waiver point, A&C seeks reversal of the District Court for allegedly committing a legal error in interpreting the Miller Act. A&C represents that it is simply winnowing or narrowing its arguments. That's incorrect. As I quoted earlier, A&C expressly argued for a different interpretation of the Miller Act, expressly stating in response to its summary judgment that, quote, both timing requirements run from the last date upon which labor was performed or material was supplied. A&C only advances novel interpretation in a Rule 59E motion. It would be patently unfair and completely inconsistent with the Seventh Circuit precedent to reverse the District Court's decision based on an alleged error in interpreting the Miller Act that A&C itself advocated for prior to losing its summary judgment. The motion here followed extensive litigation, multiple years, numerous depositions, written discovery, and millions of documents produced in exchange. In that entire time, A&C never argued that it was entitled to recover for work prior to its August 16, 2016 Miller Act notice because it sued within one year of that notice. A&C never argued for partial recovery and never once even hinted at the legal theory it presents to this Court, and A&C cannot cite to a single place in the record to suggest otherwise. In its reply brief, A&C quotes Jones v. Barnes, a Supreme Court decision dealing with whether appellate counsel must raise every non-frivolous issue requested by the waiver is not meant to be, quote, an overly technical hurdle, citing this Court's decision in Fox v. Hayes. That's true, but Fox v. Hayes deals with how an appellant addressed qualified immunity on appeal following trial, and no one claimed in that case that the appealing party failed wholesale to present an argument. A&C is not presenting some nuanced difference in its approach. It's a new legal theory. And in that respect, LB Credit Corp., the Resolution Trust Corp. cited in our brief, is precisely on point. Just like this case, the party there lost on summary judgment and then seized language in the District Court's original summary judgment order to advance a brand new legal theory. This Court confirmed that a party cannot present a brand new legal theory after losing on summary judgment, and that's exactly what A&C is attempting here. The District Court should have the opportunity to resolve these issues in the first place, and since it did not, this Court should affirm on those Permitting A&C to prosecute its new theory for the first time on appeal both creates perverse incentives and would make bad law. For the incentives, despite several years of discovery, A&C did not give the District Court or the sureties the ability to brief, argue, or present facts addressing or rebutting A&C's new theory. To consider it now would encourage gamesmanship. A&C would be rewarded for withholding a legal theory until after it lost on summary judgment. The substantive law would also suffer. This Court should not modify important statutory rights under an important contracting statute like the Miller Act based on an argument presented in the first time in appeal, particularly because that argument finds no support in the Miller Act's plain language. Turning to the substantive argument I previewed, A&C was required to provide notice 90 days from the date on which it performed labor or furnished or supplied the last of the material for which the claim is made. A&C maintains that the last day for which its claim is made is February 28, 2017. A&C undisputedly did not provide notice within 90 days from that date. Indeed, even throughout A&C's opening brief, it continues to define its last day of work, the work for which it seeks to recover, as going through February 28, 2017. The Miller Act simply does not allow A&C to recover because it did not provide notice within 90 days of that date. Mr. Owen, it's Judge Scudder. So do you measure that 90 days going forward out to what, May 29th? Yes, your Honor. Okay. What I wonder about is whether the statutory language doesn't permit a contrary interpretation, that there can be pre-completion notice, if you will. But what I worry about is the statute would not seem to allow pre-completion notice to just run indefinitely, hence that aircraft carrier hypothetical. So in other words, there's nothing wrong with saying in a notice, we want paid for work that we have completed on or before this notice date. We're going to continue working, and we're also going to want paid for the work we do in the next 90 days. But I don't see it going out into infinity. Why is that construction of the statute mistaken or incorrect in your view? Well, first, your Honor, for the purposes of this case, even that construction of the statute is fine, because ANC didn't meet the deadlines as we just discussed. No, I know. But step back from this case a second, okay? When I look at 3133b-2, and I ask myself the question, does the notice always have to be from the last date of work forward 90 days? So here, out to that May 29th, 2017 date, I'm not so sure about that as a legal matter. That's what I'm trying to ask you about. Why can't it be the other direction? Why can't it be February 28th, 2017, minus 90 days? And your Honor, in the correct case, I actually don't see any problem with that interpretation. So if a party does say it sees itself as finishing its work, so the last work for which its claim is made is going to be on February 28th, and it sends its notice on February 20th, 2017, I don't know that that presents...the Seventh Circuit precedent has held that it's prospective, but I take your point that under the plain language of the Miller Act, perhaps that February 20th date, because it would be timely, would be allowed. So if you apply that here, what you'd be saying is that, now I realize I'm, I think I'm, in your view, changing the facts, okay? So here what you would say is the notice on August 16th is fine. There's nothing that, there's nothing illegal about it. So if you want to go ahead and submit notice on August 16th and say we want paid for any and all work done from this day, you know, back in time, fine. And we're going to continue our work, and we're also going to want paid for the work we do in the next 90 days. Say fine, too. But February 28th, to the, to address that point in the context of this case, I do think it's important to keep in mind that the sort of novel interpretive theories we're grappling with here was not something that was presented to the district court until after a post-judgment motion. So to the extent the court is concerned about clarifying that issue of law, this case would not be the right case to do so because the district court didn't have the chance in the first instance to clarify that issue of law. So I think it's important to keep in mind that the evidence wasn't presented. It was only made in a Rule 59 post-judgment motion. And again, even grappling with those issues, the sureties still win because, as your Honor pointed out, February 28th, 2017 is not within 90 days looking forward or backwards from any notice provided by A&C. All right. Mr. Owen, your time is almost expired. Do you want to make a final comment? Yes, thank you. For the reasons stated in the sureties brief, this court should affirm the district court's grant of summary judgment because A&C waived the argument it makes now and because applying the plain language of the Miller Act, the sureties are entitled to summary judgment. Thank you, Your Honors. Thank you, Mr. Owen. Mr. Moore? Thank you, Your Honor. I just have a couple of points here. The first is to address Judge Scudder's question, and it's really the question is, is pre-completion notice timely, as I understand it? And the sureties haven't cited a single case in which pre-completion notice was found untimely with respect to notice the work performed prior to that notice. And the statute doesn't require that notice be given only after final completion of all the work on the project, only that it be given within 90 days within the work to which the claim is made. There's no question that if A&C's last day of claimable work was in February of 2017, then its notice was given contemporaneously with performing work for which the claim was made in the notice. So third, sending a pre-completion notice doesn't undermine the purpose of the 90-day notice provision. The provision provides a backstop to establish a day beyond which the contractor will not be liable for the debt of its subcontractors. So in other words, a prime contractor knows that if a subcontractor finishes its scope of work 90 days elapsed without a notice, then there'll be no Miller Act claim from that sub-subcontractor. But if the prime contractor receives a notice while the sub is still performing work, that doesn't undermine the purpose at all, because the prime contractor hasn't relied on the passage of time to extinguish any claims. And one more point on the waiver issue. The core of A&C's argument hasn't changed. A&C continues to argue its last day of work was in February of 2017 because of its equipment at lease to Black Hat and the labor of RNC, and argues because of those facts, its August 2016 notice and its complaint were timely under the Miller Act. We argued to the district court that plaintiff provides notice prior to the completion of the project. So A&C hasn't made any new legal or factual argument on appeal. In fact, A&C relies on the same substantive case law as the parties relied upon at summary judgment. In all those cases, cited by either party, hold that a subcontractor can provide pre- completion notice. And A&C hasn't relied on any new facts that weren't included in its rule 56.1 statement. So in both proceedings, the core question is the last day of work furnished by A&C, and in both proceedings, we argue that date was February 2017. And in both proceedings, if we're correct about that, then the judgment should not be entered in the surety's favor. So A&C therefore respectfully requests that this court reverse the district court's judgment in favor of the sureties and remand for further proceedings. Thank you, Mr. Moore. Our thanks to both counsel. The case will be taken under advisement.